# IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST RUBIN, Attorney at Law.

Supreme Court

*No. 86–1347–D. Submitted on briefs September 9, 1987.—Decided October 22, 1987.*
(Also reported in 414 N.W.2d 38.)

For the appellant, there was a brief by *Larry E. Rubin,* Madison.

For the Board of Attorneys Professional Responsibility there was a brief by *Thomas J. Basting* and *Brennan, Steil, Ryan, Basting & MacDougall, S.C.,* Janesville.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

This is an appeal from the referee's findings of fact, conclusions of law and recommendation that the

license of Larry E. Rubin to practice law in Wisconsin be suspended for 30 days as discipline for professional misconduct consisting of his having notarized a document containing what purported to be the signature of a person who had not appeared and signed the document in his presence and for having represented in a criminal proceeding the person charged with forging the signature on the document he had notarized, when it was apparent that he could be called as a witness in that proceeding. The referee also recommended that Attorney Rubin be required to pay the costs of this disciplinary proceeding.

We determine that the referee's findings of fact were not clearly erroneous and that the conclusions with respect to Attorney Rubin's violations of the Code of Professional Responsibility, SCR chapter 20, were proper in light of the facts found. Accordingly, we adopt the referee's findings and conclusions. We also accept the referee's recommendation that Attorney Rubin's license to practice law be suspended as discipline for his misconduct, but we determine that the period of suspension should be 60 days.

Attorney Rubin was licensed to practice law in Wisconsin in 1979 and practices in Madison. He has twice been disciplined for unprofessional conduct: in December, 1983, the Board of Attorneys Professional Responsibility (Board) privately reprimanded him for having engaged in misrepresentations, fraud and improper advertising and solicitation; in 1985 the court suspended his license to practice law for 90 days as discipline for having misrepresented a matter to a court, having threatened a client with legal action, having failed to keep accurate records of client funds and to account for them, having failed to file an action on behalf of a client or inform the client that the

action lacked legal merit and having misrepresented to his client that he had filed an action. *Disciplinary Proceedings Against Rubin,* 123 Wis. 2d 518, 367 N.W.2d 219 (1985). The conduct considered in the instant case predated the imposition of the private reprimand and the license suspension. The referee in this proceeding is the Honorable William C. Sachtjen, reserve judge.

Following a hearing, the referee made the following findings of fact. In November, 1983, a client asked Attorney Rubin to prepare a power of attorney to replace one the client had originally obtained from his mother in 1978 and pursuant to which he had sold his mother's home on a land contract. The original power of attorney had not been recorded, and the client had lost it. The land contract was to be fulfilled in the fall of 1983, with payment of a balance of approximately $48,000, at which time the client was to give the buyer a warranty deed.

At the time the client asked Attorney Rubin to prepare a replacement power, the client's mother was incompetent and resided in a nursing home, but the client did not tell Attorney Rubin of his mother's incompetence. Although the mother did not appear at Attorney Rubin's office, Attorney Rubin had his secretary prepare a power of attorney including signature lines for the mother and the client. The client signed the document and Attorney Rubin notarized it.

The testimony with respect to the execution of the power is in conflict; the client stated that, to his best recollection, he signed both his and his mother's names in Attorney Rubin's presence and Attorney Rubin notarized the power; Attorney Rubin, although not recalling the exact circumstances, testified that he

would not have notarized a document containing the signature of someone who had not actually appeared before him and signed it and that, in this instance, the power he notarized contained only the client's signature and that he left it to his client to obtain his mother's signature and have the power notarized again by someone else. Attorney Rubin did not recall whether the notarization form, stating that both signatories appeared before him and executed the document in his presence, was on the power when he notarized it.

After the client gave a warranty deed to the mother's property and obtained the proceeds of the land contract, he was charged in a three-count criminal complaint with having converted his mother's money to his own use, having forged his mother's signature to the November, 1983, power of attorney and having forged a written authorization to obtain money belonging to his mother. Attorney Rubin agreed to represent the client in the criminal matter and appeared at the initial appearance. Shortly thereafter, Attorney Rubin discussed a plea bargain with the district attorney, offering his client's no contest plea to two of the counts in the complaint in exchange for the dismissal of the count of forgery on the power of attorney which Attorney Rubin had prepared and notarized. The district attorney expressed concern that Attorney Rubin had a conflict of interest in representing his client in the matter, particularly in light of the fact that the count to be dismissed concerned Attorney Rubin's actions as well as his client's. Also, Attorney Rubin's proposal for a plea agreement did not address in specific terms the matter of a recommendation for sentence.

Because of those concerns, the district attorney requested a hearing before the trial judge, and at that hearing the judge directed the client's attention to Attorney Rubin's conflict of interest. The client decided to continue to retain Attorney Rubin, but shortly thereafter Attorney Rubin himself withdrew from representation. Following that withdrawal, the client was represented by a public defender and pleaded no contest to the conversion count; the remaining two counts were dismissed.

On the basis of these facts the referee concluded that, by notarizing the power of attorney, whether the client had signed his mother's name in Attorney Rubin's presence or presented the document to Attorney Rubin without the purported signature of his mother on it, Attorney Rubin engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4). The referee concluded that under any possible circumstances, Attorney Rubin either directly participated in the notarization of a forged document or created a situation permitting his client to easily forge his mother's signature on the power and give the appearance that it had been notarized by Attorney Rubin.

The referee also concluded that, by representing the client in the subsequent criminal proceeding, knowing the charges to include a count of forgery of the power of attorney, Attorney Rubin violated SCR 20.24(2), which prohibits a lawyer from accepting employment in litigation if he knows or it is obvious that the lawyer ought to be called as a witness. The referee concluded that Attorney Rubin was at all times aware that he was a potential witness against his client in a criminal proceeding.

In this appeal Attorney Rubin first contested the referee's finding that he "at all times" knew that he was a potential witness against his client in the criminal proceeding. Attorney Rubin argued that the client did not initially tell him that he had been charged with forging his mother's signature on the power of attorney but told him only that he had been charged with conversion. Consequently, he contended, he did not accept the client's representation in the criminal matter knowing that he was a potential witness.

The testimony at the disciplinary hearing established that Attorney Rubin had been given a copy of the criminal complaint, which included the forgery count, prior to the initial appearance but that, most likely, Attorney Rubin did not read the complaint in its entirety prior to appearing. Nevertheless, following the initial appearance, Attorney Rubin became aware of the forgery count and offered in exchange for its dismissal his client's no contest plea to the other two counts. Thus, whether or not he was aware of the forgery count when he appeared on his client's behalf at the initial appearance, he continued to represent the client after he became aware of the forgery charge. This constituted a violation of SCR 20.24(2).

We are not persuaded by Attorney Rubin's attempt to justify his continued representation of the client by arguing that no evidentiary hearing had been held in the criminal proceeding while he represented the client nor had he been requested or subpoenaed to appear as a witness in the criminal proceeding. Those arguments disregard the proscription in SCR 20.24(2) of accepting employment having the potential of the lawyer's being called as a witness.

Attorney Rubin next contended that the referee erred in finding that at the disciplinary hearing Attorney Rubin did not recall the exact circumstances under which he notarized the power of attorney. Attorney Rubin claimed he recalled those circumstances most clearly: the document he notarized contained only the client's signature, and he would not have notarized a document containing the signature of someone who did not appear before him and sign it in his presence. Yet, Attorney Rubin testified at the disciplinary hearing that he did not recall whether the notarization language was on the power of attorney when he signed as notary and affixed his notarial seal.

Attorney Rubin then argued that the Board did not establish by clear and convincing evidence that he had engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. He contended there were at least two conflicting theories regarding the notarization of the power of attorney: one, that the client signed both his and his mother's name in Attorney Rubin's presence, following which Rubin notarized the document; two, that Attorney Rubin notarized the document with only the client's signature on it, the client then left with the document and returned with the mother's signature on it. The referee explicitly recognized this conflict and concluded that, regardless which set of circumstances was the fact, Attorney Rubin notarized the power with the recitation that both signatories had appeared before him and executed the document, when that was not the fact. The referee did not believe Attorney Rubin's suggestion that the notarization language regarding the appearance of both signatories might not have been on the document when he notarized it.

On the issue of discipline to be imposed for his misconduct, Attorney Rubin took the position that if it is determined that he violated either or both disciplinary rules cited by the referee, the public interest does not require a license suspension—a public reprimand is sufficient. In support of his position, he stated that he did not profit financially from either violation, no person's legal rights were impaired and both alleged violations occurred prior to his having been previously disciplined. With respect to the latter, Attorney Rubin contended that whatever violations might be determined in this proceeding were, in effect, first offenses.

In recommending a 30-day suspension of Attorney Rubin's license to practice law, the referee took into account that Attorney Rubin did not directly participate in any fraud perpetrated by his client by means of the power of attorney and that he ultimately withdrew from representation of the client in one criminal proceeding, albeit after the trial judge had brought some pressure to bear in the matter. The Board had suggested to the referee that a suspension of not less than 30 days nor more than 60 days would be appropriate discipline, and it argued in this appeal that the misconduct should be considered as Attorney Rubin's first violation of the Code of Professional Responsibility for the reason that it occurred prior to the conduct which gave rise to his license suspension in 1985.

We agree that the seriousness of the misconduct before us warrants the suspension of Attorney Rubin's license to practice law. He violated his duty to the legal system by abusing his notarial authority with respect to a legal document and he placed his own interests above the interests of his client when he represented his client and sought the plea agreement

in the criminal matter while his and the client's interests conflicted. It appears that the referee recommended what he considered to be the minimum period of license suspension. However, the court has determined that the protection of the public and the legal system from professional misconduct requires that the minimum period an attorney's license will be suspended is 60 days. *Disciplinary Proceedings Against Schnitzler,* 140 Wis. 2d 574, 412 N.W.2d 124 (1987). Therefore, while we adopt the referee's findings of fact and conclusions of law, we modify his recommendation for discipline accordingly.

IT IS ORDERED that the license of Larry E. Rubin to practice law in Wisconsin is suspended for a period of 60 days, commencing November 23, 1987.

IT IS FURTHER ORDERED that within 60 days of the date of this order Larry E. Rubin pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing of his inability to pay the costs within that time, the license of Larry E. Rubin to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Larry E. Rubin comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.